UNITED STATES of America, Appellee,

v.

Morris Harris SMITH and Milton Hugh Freeman, Appellants.

Nos. 84–5007–MN, 84–5008–MN.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1984.

Filed Sept. 4, 1984.

Daniel M. Scott, Federal Public Defender, Dist. of Minn., Minneapolis, Minn., for appellants.

James M. Rosenbaum, U.S. Atty. by Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY and HEANEY, Circuit Judges and COLLINSON, Senior District Judge.*

COLLINSON, Senior District Judge.

Appellants Milton Hugh Freeman and Morris Harris Smith were indicted in the United States District Court for the District of Minnesota on one count of bank robbery in violation of 18 U.S.C. § 2113. After a joint trial, verdicts of guilty were returned by the jury against each defendant. Freeman was sentenced to a period of imprisonment for eight years and Smith was sentenced to a period of imprisonment for six years. On appeal, Freeman contends that (1) the trial court erred in not giving a cautionary instruction regarding the jury's proper consideration of prior inconsistent statements and (2) the evidence was insufficient to warrant a conviction against him. Smith contends that the trial court erred in allowing Smith's wife to testify in violation of the husband-wife privilege. We reject these arguments and affirm the convictions.

## FACTS

On August 18, 1983, the Norwest Bank at 3030 Nicollet Avenue South in Minneapolis, Minnesota, was robbed. Bank teller Shirley Mukes testified that at approximately 1:30 p.m. on that date a man approached her teller station and handed her an envelope on which was written "I want all 100's and 50's or you are dead." In response to the demand note, Mukes testified that she placed $4000.00 in one hundred dollar bills in a brown paper bag and gave it to the robber.

Michael Spivak, another teller at the bank, testified that as the robber left Mukes' teller station and headed toward the door he observed a second man pick up a bank brochure and intercept a security guard walking in the same direction as the robber. The second man appeared to ask a question regarding the brochure and after the first robber had left the bank, he abruptly ended the conversation and left. Photographs taken by surveillance cameras were identified by the witnesses and presented in evidence.

Some time later, special agent Michael Georgen of the Federal Bureau of Investigation interviewed Smith in connection with the investigation of the robbery and Smith confessed that he had robbed the bank. Other evidence against Freeman included testimony that on the same day of the bank robbery, at approximately 6:30 p.m., Freeman purchased a 1975 Cadillac sedan with thirteen one hundred dollar bills. In addition, a fingerprint expert testified that the palm print of Freeman was found on the back of the demand note which was given to the teller during the robbery.

## PRIOR INCONSISTENT STATEMENTS

Defendant Smith is the stepfather of defendant Freeman. A few months before the robbery took place, Freeman moved in with his mother, Diane Widstrom, and Smith. Widstrom was interviewed by agents of the FBI twice before the trial and on each occasion she testified that her son told her that he had robbed a bank. She also identified Freeman's handwriting on the demand note which was presented to the teller. However, when called as a witness at trial, Widstrom denied that her son had told her that he had robbed a bank and she denied that the demand note was written in her son's handwriting. To impeach her testimony, the FBI special agent who interviewed Widstrom was called to the stand and testified as to the substance of Widstrom's prior statements and identified her signed written statement. Smith's counsel objected to the admission of the prior written statement on the basis that it could not be considered as evidence of the offense itself and requested the court to give a cautionary instruction telling the jury that the inconsistent prior statements

* The Honorable William R. Collinson, United States Senior District Judge, Eastern and West-

ern Districts of Missouri, sitting by designation.

could be considered only on the limited issue of the credibility of the witness. Freeman's counsel joined in the objections made by Smith. The court denied the offer into evidence of the prior written statement and the following exchange between the court and counsel was made:

MR. SCOTT [counsel for defendant Smith]: Could I ask the Jury be warned as to the nature?

THE COURT: Call it to my attention on the instructions and I'll give it.

MR. SCOTT: Okay.

Tr. p. 125. Counsel for defendant Freeman said nothing. In his charge to the jury, the trial court gave an explicit limiting instruction on the proper use of inconsistent statements which included the following specific statement that

evidence that at some other time a witness has said or done something or has failed to say or do something which is inconsistent with the witness' testimony at the trial may be considered by you for the sole purpose of judging the credibility of the witness. That is particularly true for the mother of one of these defendants who testified. But that evidence may never be considered as evidence of proof of the truth of any statement.

Appellee's Brief, pp. 12–13.

■ Freeman argues that the trial court erred in failing to give the cautionary instruction at the time of the impeachment rather than at the close of the case. However, Freeman has failed to preserve this issue for appellate review. As noted above, when the trial court indicated its intention to give the requested instruction at the close of the case, counsel for defendant Smith expressed his agreement. Counsel for defendant Freeman, by his silence, also indicated his agreement with the court's decision and cannot now assert error on appeal. *See United States v. Flemino,* 691 F.2d 1263 (8th Cir.1982).

Even had Freeman properly preserved his objection, no error was committed in postponing the cautionary instruction until the close of the case in the circumstances before us. The entire trial lasted only one and one-half days, and the testimony of Widstrom, the testimony of the FBI agent regarding her prior inconsistent statements and the instructions to the jury all occurred on the same day. In fact, the FBI agent's testimony was the final evidence in the case and immediately preceded the closing arguments and the giving of the jury instructions. Under these facts, we are satisfied that the cautionary instruction effectively communicated to the jury the limited purpose of the evidence.

## SUFFICIENCY OF THE EVIDENCE

■ Freeman argues that the government merely proved that he was present in the bank at the time of the robbery and that such evidence is insufficient proof that Freeman was a participant in the robbery. In support of this argument, Freeman cites *United States v. Holt,* 427 F.2d 1114 (8th Cir.1970). The Court agrees that mere presence at the scene of the crime is insufficient evidence of guilt, but we disagree that this was the only incriminating evidence against Freeman at trial.

In his opening statement, Freeman's counsel admitted that Freeman was in the bank on the day of the robbery and that he had a conversation with a security guard about a bank brochure. One of the bank tellers testified that this conversation occurred as the robber with the money left the bank. Other evidence included testimony that only one hundred dollar bills were taken in the robbery; that five hours after the robbery, Freeman purchased an automobile with thirteen one hundred dollar bills; and that Freeman's palm print was found on the demand note.

■ Freeman's suggestions that this evidence amounted to no more than a showing of presence, and that the verdict was based on speculation and conjecture are frivolous. The record establishes that Freeman had contact with the demand note, shared in the proceeds of the robbery, and knowingly participated in the robbery itself. In viewing the evidence, and all reasonable infer-

ences arising from the evidence, in the light most favorable to the jury's verdict, it is clear that Freeman's conviction was warranted. *See United States v. Yancy,* 688 F.2d 70 (8th Cir.1982).

## SPOUSAL TESTIMONY

Defendant Smith seeks reversal of his conviction on the basis that the trial court erred in permitting Smith's wife to testify in violation of the husband-wife privilege.

In *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the United States Supreme Court modified the prior law concerning the privilege against adverse spousal testimony "so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." 445 U.S. at 53, 100 S.Ct. at 914. Thus, if the witness-spouse is an unwilling witness and her testimony would in fact be adverse to her husband's interest, she may not be compelled to testify.

At the time Widstrom was called to the stand by the government, counsel for defendant Smith requested a bench conference at which he informed the trial court that the witness did not wish to testify against her husband and requested the court to examine the witness outside the presence of the jury regarding her intent to claim the privilege. Counsel for the government questioned Smith's standing to object and stated his intention to ask questions directed solely to the guilt of defendant Freeman. The trial court denied Smith's request for a hearing and permitted the witness to testify. As noted previously, Widstrom denied that her son had told her that he had robbed a bank and denied that the demand note was written in his handwriting and she was impeached by use of prior inconsistent statements. On cross examination by counsel for defendant Smith, Widstrom stated that she was "unhappy" testifying and that she would not testify "except that [she had] to be on the witness stand." Tr. p. 82.

A careful review of the transcript establishes the absence of reversible error

arising from the testimony of Diane Widstrom because her testimony, in fact, was not damaging to her husband. Although the questions posed to her were directed to and capable of incriminating her son Freeman, Widstrom cannot assert the privilege to withhold testimony that would be adverse to someone other than her spouse. Because we can find nothing in Widstrom's testimony that would tend to implicate her husband, there was no error in permitting her to testify.

Although no error resulted in the present case, when the trial court was confronted with defense counsel's statement that the witness desired to assert the marital privilege, the better procedure would have been to examine the witness outside the presence of the jury to determine whether or not she claimed the privilege and whether or not her claim of privilege was valid, i.e., whether her testimony would in fact be adverse to the interests of her spouse.

## CONCLUSION

For the above reasons, we are satisfied that the contentions on appeal are without merit. Accordingly, the convictions are affirmed.

Affirmed.