**In re Debra MARTENSON, Petitioner.**

**No. 85–5204.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1985.

Decided Dec. 13, 1985.

Rehearing Denied January 9, 1986.

Charles L. Hawkins, St. Paul, Minn., for petitioner.

Kathryn E. Rooklidge, Washington, D.C., for appellee.

Before ROSS, McMILLIAN, and ARNOLD, Circuit Judges.

ROSS, Circuit Judge.

Appellant, Debra Martenson, appeals [1] from an order of the district court [2] holding her in civil contempt for her refusal to answer deposition questions posed by the United States in a wrongful levy action under 26 U.S.C. § 7426(a)(1) (1982). The district court rejected appellant's assertion that the marital privilege against adverse spousal testimony insulates her from compulsion to provide the requested testimony. We find that the privilege was not available to appellant and affirm the order of contempt.

This dispute centers around the government's efforts to establish that appellant's husband, Richard Martenson, is the owner of a Thunderbird Formula speedboat which the United States has seized in partial satisfaction of a jeopardy tax assessment against him.[3] Richard Martenson's mother, Violette Martenson, filed a wrongful levy action against the United States, alleging that at all pertinent times her husband, now deceased, and she owned the boat. In connection with defense of the wrongful levy suit, the United States sought to depose appellant as to matters within her knowledge concerning the purchase, transportation and custody of the boat.

Appellant asserted the privilege against adverse spousal testimony in response to all questions asked by the United States except her name, her husband's name and the fact of their marriage. In her appearances before a magistrate, the district court and this court, appellant was asked to explain in what respect answers to the government's questions could be adverse to her spouse. In each proceeding appellant indicated only that her husband's assets, including the boat if he is the owner, may be subject to forfeiture if the United States prevails with respect to criminal RICO [4]

---

1. For purposes of our review of this case on the merits, we treat it as a direct appeal from an order of contempt entered against a nonparty witness. *In re Murphy,* 560 F.2d 326, 332 n. 10 (8th Cir.1977).

2. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

3. Richard Martenson is currently challenging the tax assessment in the United States Tax Court.

4. *See* Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982)

(RICO). Section 1962 prohibits, among other offenses, the participation in or conduct of an enterprise through a pattern of racketeering activity. Section 1963(a) (amended 1984) provides for forfeiture of the following property to the United States by anyone convicted of a section 1962 offense:

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

and mail fraud charges pending against him in Illinois. Richard Martenson was convicted of mail and wire fraud and racketeering offenses in 1982 in the United States District Court for the Northern District of Illinois. The Seventh Circuit reversed the conviction in 1985 for evidentiary error,[5] and Mr. Martenson expects to be reindicted and retried.

The district judge ordered appellant to provide the requested testimony because he considered the adverse testimony privilege inapplicable in civil proceedings.[6] He also questioned whether the privilege should be available when neither spouse was a party to the underlying action in which appellant's testimony was sought.[7]

We need not decide whether the adverse testimony privilege may be asserted in a civil case to which neither spouse is a party, because we find that appellant has failed to demonstrate that her anticipated testimony would in fact be adverse to a protected interest of her spouse. We have previously refused to recognize the privilege as to questions eliciting only objective facts reflecting no illegal activity by anyone. *United States v. Brown,* 605 F.2d 389, 396 (8th Cir.), *cert. denied,* 444 U.S.

972, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979). *Accord, In re Grand Jury Proceedings,* 664 F.2d 423, 430 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Moreover, blanket assertions of the privilege are not favored. *See In re Lochiatto,* 497 F.2d 803, 805 n. 3 (1st Cir.1974): "[T]he privilege is not a general one. It must be asserted as to particular questions." The privilege is not available unless the anticipated testimony "would in fact be adverse" to the nonwitness spouse. *United States v. Smith,* 742 F.2d 398, 401 (8th Cir.1984). We therefore require that more than a speculative threat of injury to the spouse appear in the record to support a valid claim of privilege.

Appellant urges us to honor the privilege on the ground that the testimony sought is "intimately connected with a prospective criminal prosecution." We have examined the government's questions, and we find no such intimate connection. The United States has made no effort in this action to interrogate appellant about sources of income used to purchase the boat, activities in which it was engaged or any other indicia of a relationship between the boat and

---

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and

    (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

**5.** *United States v. Feldman,* 761 F.2d 380 (7th Cir.1985).

**6.** The Supreme Court had adopted this position in Proposed Rule of Evidence 505(a), although Congress rejected the proposed privilege rules in favor of FED.R.EVID. 501 encouraging federal development of privilege law in light of reason and experience. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 505[01]–[04] (1985). *See also Hawkins v. United States,* 358 U.S. 74, 77, 79 S.Ct. 136, 138, 3 L.Ed.2d 125 (1958) ("The basic reason the law has refused to pit wife against husband or husband against wife *in a trial where life or liberty is at stake* was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as

well.") (emphasis added). *See generally Ryan v. Commissioner,* 568 F.2d 531, 542–45 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) (refusing to recognize the privilege in the circumstances of a civil tax proceeding but declining to adopt a general rule limiting the privilege to use in criminal cases).

**7.** *See In re Snoonian,* 502 F.2d 110, 112 (1st Cir.1974), suggesting that "[t]he marital privilege would not excuse [the husband] from testifying at a trial in which his wife was not a defendant even if she were indicted and being tried separately." *Accord* 8 J. Wigmore, *Evidence in Trials at Common Law* § 2234, at 232 (J. McNaughton rev. ed. 1961) ("[B]y the orthodox view the privilege applies only in favor of a person *against whom as a party to the cause the testimony of a wife or husband* is offered.") (emphasis in original). *But see In re Grand Jury Matter,* 673 F.2d 688, 692 (3d Cir.), *cert. denied,* 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), extending the privilege to a grand jury witness whose testimony regarding a third person who had engaged in a common scheme with both spouses would clearly incriminate the witness's spouse. *Accord In re Grand Jury (Malfitano),* 633 F.2d 276, 279–80 (3d Cir.1980).

the conduct for which Richard Martenson faces prosecution in Illinois.

Given three opportunities to identify the perceived threat to her husband's interests, appellant has suggested only one potential injury attributable to the government's inquiry. That injury is the possibility that Mr. Martenson might in a future forfeiture action lose the boat, and only then if in such action, a connection between the boat and the conduct or proceeds of racketeering activity can be established. We can find in appellant's arguments and our own scrutiny of the deposition questions no indication of a threat to Richard Martenson's penal interests. Instead, the spousal interest which the privilege has been invoked to protect amounts to no more than Mr. Martenson's property interest in the boat.

Even if Richard Martenson's property interest in the boat were to be considered within the scope of protection afforded by the privilege, actual loss of the boat through forfeiture would yet be contingent upon the outcome of three other trials. The boat will not be subject to the anticipated forfeiture proceedings if: (1) Violette Martenson wins the wrongful levy action in which she claims ownership of the boat; (2) Richard Martenson's challenge to the government's tax assessment proves successful in the Tax Court, or (3) the United States fails to obtain a conviction against Richard Martenson in the Northern District of Illinois for RICO violations or fails to establish the requisite connection between the boat and RICO activity or income.

Expansion of the privilege against adverse spousal testimony would be contrary to developments narrowing the scope of the privilege. *See, e.g., Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980), modifying prior law to permit only the witness to claim the privilege and divesting the nonwitness spouse of the right to bar adverse spousal testimony. In discussing the viability of the privilege, the Supreme Court stated:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public ... has a right to every man's evidence.' " *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 1453, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting). Accord, *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

*Id.* at 50–51, 100 S.Ct. at 912.

Appellant has never suggested that the deposition sought disclosure of confidential communications between husband and wife. In our view, the government's questions were directed at objective facts concerning appellant's personal history and the purchase and possession of the boat. Absent a discernible adverse impact on the spouse's penal interests and in view of the speculative nature of the threat posed even to his property interests, we must conclude that the testimony sought was unprotected by the adverse testimony privilege. The district court therefore properly declined to expand the privilege to foreclose the government's inquiry in this civil tax proceeding between the United States and appellant's mother-in-law. Accordingly, the judgment of the district court is affirmed.

·

## APPENDIX

Debra Martenson asserted the privilege against adverse spousal testimony on June 4, 1985 before a magistrate in response to all of the following questions:

What's your social security number, Mrs. Martenson?

Do you believe that giving your social security number would be testimony against your husband?

What's your age?

What's your date of birth?

What's your educational background?

When were you married?

Have you ever lived in Florida?

Have you ever lived at 200 Southeast 15th Road, Apartment 3D, Miami, Florida?

Have you ever known Richard Martenson to live at that address?

Was your telephone number in Florida 854–0356?

Have you ever known that to be Richard Martenson's telephone number?

Were you living in Florida in April of '79?

Did you know Richard Martenson at that time?

Were you ever employed at First Guaranty Metals in Florida?

Was Richard Martenson employed there?

Were you personally involved with Richard Martenson during April of 1979?

Did you see him frequently?

Have you ever met Richard Martenson's parents, Virgil and Violette Martenson?

Did Virgil and Violette Martenson ever visit Florida while you were in Florida?

How many times might they have visited?

When did their trips take place?

Did Virgil and Violette Martenson visit Florida in April of 1979?

Did they spend any time with Richard during April of 1979 in Florida?

Did Virgil and Violet Martenson purchase a 25-foot Thunderbird Formula speedboat in April of 1979?

Did Virgil and Violette tow the boat back from Florida to Minnesota in April of 1979?

What vehicle did they use to tow it?

Have you ever ridden on a Formula speedboat?

When?

Where?

Who was driving?

When did you move from Florida to Minnesota?

Have you, by yourself or together with anyone else, towed a boat from Florida to Minnesota, namely, a 25-foot Formula speedboat?

Have you ever lived at 5597 Timber Lane, Excelsior, Minnesota?

Did Richard live at that address also?

Did Richard ever drive a 25-foot Thunderbird Formula speedboat when you were living in Florida?

Could you please describe that boat, if he did indeed drive one?

Was the boat stored at Grove Key Marina in Florida?

Did Richard ever drive a 25-foot Thunderbird Formula speedboat after you moved back to Minnesota?

Was that the same boat he may have driven in Florida?

How did the boat get to Minnesota?

Was the boat stored at Tonka Bay Marina?

Did Richard Martenson purchase a 25-foot Thunderbird Formula speedboat in April of '79?

If so, have Virgil and Violette Martenson ever had possession of that boat?

If they have had possession, when and for how long?