

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-1997

# In Re: Grand Jury (Pt. II)

Precedential or Non-Precedential:

Docket 97-7018

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"In Re: Grand Jury (Pt. II)" (1997). *1997 Decisions*. Paper 91.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/91

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————

No. 97-7018

———————————

IN RE: GRAND JURY

———————————

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 96-mc-00093)

———————————

Argued March 26, 1997

Before:  SLOVITER, Chief Judge,
STAPLETON and ALDISERT, Circuit Judges

(Opinion filed April 25, 1997)

———————————

James A. Backstrom, Jr. (Argued)
Vaira, Backstrom & Riley
Philadelphia, PA 19103

     Attorney for Appellant

Colm F. Connolly  (Argued)
Office of the United States Attorney
Wilmington, DE 19899-2046

     Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Chief Judge.

          On this appeal we must consider whether the

government's grant of use and derivative use immunity (use-fruits

immunity) to the spouse of a witness is sufficient to defeat the witness's privilege against adverse spousal testimony. This is a question of first impression for this court in the context in which it is presented.

## I.

A witness before a grand jury who asserted her privilege not to testify as a witness against her husband in a criminal proceeding appeals from the contempt order entered by the district court. The witness is the wife of John Doe 2, who is not the target but is a subject of a grand jury investigation.

In order to secure the testimony of the spouse-witness, whom it had subpoenaed, the district court, at the request of the government, granted the witness personal immunity under 18 U.S.C. § 6002 and 6003. The witness appeared before the grand jury and answered only preliminary questions, refusing to answer the bulk of the questions, and invoked the adverse spousal testimonial privilege. That day the grand jury issued a subpoena duces tecum requiring the witness to provide tapes of conversations between the witness's husband and others which she illegally recorded.[1] Nonetheless, the witness again asserted her spousal testimonial privilege before the grand jury and refused to answer various questions on the ground that to do so would force her to be a witness against her husband in a criminal proceeding.

---

[1] All parties agree that these recordings are "testimony" and are subject to the adverse spousal testimonial privilege. The non-witness spouse and the grand jury target have also moved to quash the subpoena duces tecum on different grounds. Their motions are the subject of a separate appeal in a related case in this court, In re Grand Jury, No. 97-7016/17, which has been decided in an opinion issued contemporaneously with this one.

2

The matter came to issue when the witness filed a motion to quash the subpoena on the basis of the privilege. On the same day, the government filed a motion to compel the witness's testimony and supplied an affidavit by the Assistant United States Attorney in charge of the grand jury investigation in which he promised the witness that the government would give use-fruits immunity to her husband in exchange for her testimony. Specifically, the government promised that it would "not use the testimony of [the witness spouse] or the fruits thereof in any way, either directly or indirectly, in any criminal proceeding against her husband . . . [and] the United States will not present to this grand jury an indictment in which [her husband] is named as a defendant." App. at 50. The government also represented in papers filed with the court that "in the event that a separate grand jury indicted [the husband], the government would bear the burden of establishing that the evidence it used to indict [the husband] and the evidence it would use at [the husband's] trial were derived from legitimate sources wholly independent of [the witness's] testimony and production of the tapes." App. 59.

In support of its motion, the government argued that immunizing the witness's husband from any adverse effects of her testimony necessarily made inapplicable the asserted privilege. The district court denied the motion to quash and granted the government's motion to compel the witness's testimony, with the exception of answers or material that would reveal confidential attorney-client or marital communications. As to the spousal

3

privilege, the court agreed that the government's promise not to use the testimony against the husband sufficiently insulated the witness's spouse so as to overcome the spousal privilege.

The witness appeared before the grand jury the next day but still refused to testify or produce the subpoenaed material, asserting her privilege against adverse spousal testimony and her marital communications privilege. The parties stipulated to the record, and the district court found the witness to be in contempt, but stayed imposition of sanctions pending this appeal.

**II.**

Rule 501 of the Federal Rules of Evidence provides, in relevant part, that:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in the rules proscribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Federal courts have recognized two kinds of marital privilege: the privilege that protects confidential marital communications and the privilege that protects a witness from testifying against his/her spouse. It is only the latter privilege that is now before this court.

It is, we note at the outset, a privilege that has been sharply criticized by the Supreme Court of the United States. In Trammel v. United States, 445 U.S. 40 (1980), the Court quoted Professor Wigmore's statement that the privilege against adverse

4

spousal testimony is "'the merest anachronism in legal theory and an indefensible obstruction to truth in practice.'"  Id. at 44–45.  Noting that "[n]o other testimonial privilege sweeps so broadly," id. at 51, the Court cited its authority to use "'reason and experience,'" id. at 46 (quoting Fed. Rule Evid. 501), to "'develop rules of privilege on a case-by-case basis,'" id. at 46 (quoting 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate)).  The Court explained that unlike the marital communications privilege which protects private communications, the spousal privilege seeks "to exclude evidence of criminal acts and of communications made in the presence of third persons" in order to preserve marital harmony.  Id. at 51.

The specific question in Trammel was whether a criminal defendant may invoke the privilege against adverse spousal testimony so as to exclude the voluntary testimony of his wife. In the course of its "all-but-unanimous opinion," id. at 53 (Stewart, J., concurring), the Court stated that "[t]he ancient foundations for so sweeping a privilege have long since disappeared," id. at 52.  It analyzed "whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice."  Id.  Rather than follow the action of many states and abolish the privilege in its entirety in favor of a privilege for confidential marital communications, which had been recommended by the National Conference of Commissioners on Uniform State Laws, the Court limited its holding to the issue before it – the right of one spouse to use

5

the privilege to prevent testimony by a willing spouse.

The Trammel Court held that only the witness spouse, not the non-witness spouse, could invoke the privilege against adverse spousal testimony. See id. at 53. Although the issue presented here is different, since at this time the witness spouse is not willing to provide the testimony, the Supreme Court's discussion in Trammel informs our analysis.

The district court here relied on the government's promise of use-fruits immunity in holding that the non-witness spouse would be adequately insulated from the effects of the witness spouse's testimony. The witness argues on appeal that because the mere utterance of her testimony, regardless of the criminal consequences, would adversely affect marital harmony, the government's promise not to use her testimony against her husband is insufficient to overcome the spousal testimonial privilege. She asserts that the privilege involves "a basic right to refuse to provide testimony that implicates [a spouse]." Appellant's Reply brief at 2. Citing Trammel, 445 U.S. at 53, the witness argues that "with the adverse spousal testimony privilege, it is not disclosure of communications that is protected but rather the impact of the testimony on the marriage." Id. at 3.

This court has never suggested that the privilege is so broad as to protect any testimony at all by a spouse. For example, in United States v. Fields, 458 F.2d 1194, 1199 (3d Cir. 1972), cert. denied, 412 U.S. 927 (1973), the witness-spouse was called to testify by a co-defendant of her husband. Both

defendants were convicted. On appeal, we rejected the non-witness spouse's contention that the trial court committed reversible error by permitting his spouse's testimony. We explained that the spousal testimonial privilege did not prevent a spouse from testifying at a trial in which her spouse was one of two defendants. Although the trial court should have severed the defendant husband, it was harmless error as her testimony was not adverse to her spouse. See also United States v. George, 444 F.2d 310, 313-14 (6th Cir. 1971) (witness could not claim adverse spousal testimonial privilege to avoid testifying before a grand jury investigating conspiracy involving gambling information merely because his wife, who was not involved in the conspiracy, had filed joint income tax returns with him).

Nor are we persuaded by the witness's argument in this case that she can assert the privilege despite the promise of use-fruits immunity. The grant by the government of use-fruits immunity is a well-established prosecutorial tool to compel testimony that is otherwise privileged. Although the constitutional guarantee against self-incrimination is the most important of privileges and "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty," Kastigar v. United States, 406 U.S. 441, 444 (1972), the Supreme Court in Kastigar allowed grants of use-fruits immunity to obviate the Fifth Amendment privilege. Id. at 448. The Court explained that grants of immunity "seek a rational accommodation between the imperatives of the privilege and the legitimate demands of

7

government to compel citizens to testify." Id. at 446.

Kastigar built upon the earlier holding of the Court in Ullmann v. United States, 350 U.S. 422, 430-31 (1956), where the petitioner argued that grants of immunity would not protect his privilege against self-incrimination because they could not shield him from such adverse consequences as job-loss and "general public opprobrium." Id. Rejecting this argument, the Ullmann Court explained that the Fifth Amendment only applies where a witness is asked "to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the amendment ceases to apply." Id. at 431 (internal quotations omitted).

The witness's argument that her spousal testimonial privilege protects the very act of testifying, regardless of whether the government could use the information to prosecute her husband, overlooks the significance of adversity in determining the scope of the privilege. Courts have consistently recognized that the privilege only applies to testimony that is "adverse" to the other spouse. See, e.g., United States v. Van Cauwenberghe, 827 F.2d 424, 431 (9th Cir. 1987)(refusing to recognize the spousal privilege where the witness failed to demonstrate that the testimony was adverse to her spouse's penal interests), cert. denied, 484 U.S. 1042 (1988); In re Martenson, 779 F.2d 461, 464 (8th Cir. 1985)(same); In re Grand Jury Proceedings, 664 F.2d 423, 430 (5th Cir. 1981) (same), cert. denied, 455 U.S. 1000 (1982). These cases make clear that the privilege is "not available unless the anticipated testimony would in fact be

adverse to the non-witness spouse." Martenson, 779 at 463
(internal quotations omitted).

We thus hold that once the government grants immunity
that eliminates the possibility that the testimony will be used
to prosecute the witness's spouse, the witness may no longer
invoke the testimonial privilege.[2]  This is the position adopted
by all courts of appeal which have addressed this issue.  In
United States v. Doe, 478 F.2d 194, 195 (1st Cir. 1973), a
husband and wife were both summoned to appear before the grand
jury in connection with joint criminal activity.  They both
claimed their Fifth Amendment privilege and were subsequently
granted immunity.  Each then claimed the spousal testimonial
privilege, stating that their testimonies would be adverse to the
other.  The court found no privilege "when both are immunized
from prosecution and are asked questions about the same
transaction."  Id. at 195.

In In re Snoonian, 502 F.2d 110, 112 (1st Cir. 1974), a
husband and wife were subpoenaed to appear before the grand jury.
 The wife refused to testify, asserting her Fifth Amendment
privilege.  The husband was granted use-fruits immunity to compel

---

[2]  Judge Aldisert does not join in this one sentence of the
opinion, and adds this concurring statement: "I object to the
sweep of this statement because it goes beyond the facts in this
case.  Being an unreconstructed follower of the Roscoe Pound
tradition that a holding in a case announces a specific legal
consequence attached to a definite state of facts, I prefer that
this sentence  read: 'We thus hold that under the facts of this
case, in which the government's specific grant of immunity
eliminates the possibility that the testimony will be used to
prosecute the witness's spouse, the witness may no longer invoke
the testimonial privilege'."

9

his testimony over Fifth Amendment objections but he still refused to answer questions, claiming that to compel him to do so would violate his spousal testimonial privilege. The government filed an affidavit in which it promised that neither his testimony nor its fruits would be used in any way in a proceeding against his wife. Id. at 111-12. The court held that this promise "nullifies any claim of privilege as grounds for [the husband's] refusal to testify." Id. at 112. This decision was followed by the Second Circuit in Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 255 (2d Cir. 1985), where the court held that use-fruits immunity that "is fully co-extensive with the scope of the privilege against adverse spousal testimony" sufficiently meets the claim of the privilege by the testifying spouse.

In recognizing that the grant of immunity will defeat the adverse spousal testimonial privilege, we merely make explicit that which was implicit in our earlier decisions. In In re Grand Jury (Malfitano), 633 F.2d 276, 278 (3d Cir. 1980), we upheld the wife's entitlement to assert her spousal testimonial privilege even though both she and her husband were allegedly involved in the criminal acts being investigated. We also rejected the government's argument that because it had promised not to use the wife's testimony in any future proceedings against her husband, the wife could no longer claim the privilege. Id. at 279. We found this limited immunity to be insufficient to overcome the spousal privilege since "there is nothing to prevent this grand jury from considering the [spouse's] testimony in

deciding whether to indict. There is no indication that the government intends to . . . ensure that the grand jury does not use [the wife's] testimony against her husband." Id. We distinguished the decision in In re Snoonian on the ground that in that case "the witness' spouse was not a target, and the government expressly promised that 'this Grand Jury has no intent to prosecute your wife on the basis of your testimony here.' Contrary to the present case, it was clear that the grand jury before which the husband would testify would not use his testimony to indict his spouse." Id. at 280 (quoting Snoonian, 502 F.2d at 111). We nonetheless noted that "the [spousal testimonial] privilege is not absolute: it does not shield all testimony nor does it bar procedures that may protect the spouse from the effect of the testimony." Id. at 280 n.6.

Two years later in In re Grand Jury Matter, 673 F.2d 688, 689 (3d Cir.), cert. denied, United States v. Doe, 459 U.S. 1015 (1982), we affirmed the order of the district court denying the government's motion to compel a witness to testify before a grand jury after she had asserted her privilege against adverse spousal testimony. The witness had already pled guilty to her involvement in the drug operation and her husband was a target of the grand jury investigation. In order to compel her testimony, the government initially appeared to promise the witness that it would confer on her husband immunity that was coextensive with the statutory use and derivative use immunity. Id. at 690. Ultimately, the government promised the witness only that it would not present an indictment to that particular grand jury

11

naming her husband as a defendant.  If the wife's testimony implicated a third party who was then willing to testify against her husband, the government would impanel a separate grand jury to seek her husband's indictment.  See id.

In our analysis of whether this government promise was sufficient protection of the spousal testimonial privilege, we explained that in Malfitano "[b]y implication we suggested that if the Government 'sever(ed) the husband's indictment from that of the other defendants to ensure that the grand jury does not use the appellant's testimony against her husband,' the privilege might thereby be respected."  Id. at 692 (quoting Malfitano, 633 F.2d at 279).

However, we found that the government's promise not to present an indictment to this particular grand jury was inadequate to preserve the integrity of the privilege against adverse spousal testimony because the only change from the Malfitano undertaking was that "the impact of the spouse's testimony is delayed," as the wife's "testimony is sought with the expectation that it may lead to his indictment by a subsequent grand jury."  Id. at 693.

In the case before us now, the government makes the promise that the witness's testimony cannot be used directly or indirectly in order to indict her husband either before the present grand jury or a future grand jury.  This is essentially the offer of broad use-fruits immunity that was made and then withdrawn in In re Grand Jury Matter.  See id. at 690.  This promise is broad enough to overcome the concerns raised in

12

<u>Malfitano</u> that the government not use the spouse's testimony to indict before the existing grand jury, as well as the concerns raised in <u>In re Grand Jury Matter</u> that the testimony not be used to indict in any future proceeding.

The witness asserts that the principal rationale for the privilege would be undermined by the very act of testifying, regardless of its incriminating impact. Taking the witness's argument to its logical conclusion, even transactional immunity would be insufficient, because the harm to be avoided occurs at the moment of the witness's testimony, regardless of the lack of any potential adverse legal consequences to the spouse flowing from that testimony.

But no court has suggested the privilege sweeps that broadly. Indeed, as we explained in <u>Malfitano</u>, the rationale for the privilege is "that it protects the marriage from the discord that occurs when one spouse testifies against the other." 633 F.2d at 277 (emphasis added); <u>see</u> <u>also</u> <u>Trammel</u>, 445 U.S. at 44. With use-fruits immunity, as the government has granted here, the witness's testimony will not have adverse legal consequences to her spouse, so the purpose of the privilege is in no way undermined.

The Supreme Court rejected an argument similar to the witness's in the Fifth Amendment context in <u>Kastigar</u>. There the Court explained that the grant of immunity must be coextensive with the privilege, but need not be broader. <u>See</u> <u>Kastigar</u>, 406 U.S. at 453. "Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled

testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted." Id.

In summary, in the case before us the government promised the witness that it would not use her testimony, or the fruits thereof, in any criminal proceeding against her husband or seek an indictment before the same grand jury before which she was testifying. The government has undertaken the burden of showing the independent source of any evidence it uses should it subsequently indict the witness's husband. This use-fruits immunity is sufficient in the Fifth Amendment context to defeat the privilege against self-incrimination, see Kastigar, 406 U.S. at 453, and we hold that it is equally sufficient to defeat the privilege against adverse spousal testimony and to compel the witness to testify.

### III.

For the reasons set forth we will affirm the district court's order holding the witness in contempt for refusing to answer questions before the grand jury and continuing to assert her spousal privilege even though the government had promised that it would not use her testimony or the fruits thereof in any criminal proceeding against her husband.

14