RENDERED: AUGUST 29, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000176-MR

FINAL

DATE 9-24-19 By 6.H

JACKIE LUCAS                                                               APPELLANT

ON APPEAL FROM COURT OF APPEALS

V.                      CASE NO. 2018-CA-000002-MR

JEFFERSON CIRCUIT COURT NO. 16-CI-003880

HON. JUDITH E. McDONALD-BURKMAN,                          APPELLEE
JUDGE, JEFFERSON CIRCUIT COURT

AND

BAPTIST HEALTHCARE SYSTEM, INC. AND
STEPHEN HANSON                          REAL PARTIES IN INTEREST

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING IN PART AND REVERSING IN PART**

Appellant, Jackie Lucas, appeals from the Court of Appeals' order

granting in part and denying in part her petition for a writ to prohibit the trial

court from compelling her husband's deposition testimony. For the following

reasons, we affirm the Court of Appeals in part and reverse the Court of

Appeals in part, thereby denying Lucas's writ petition in whole.

# I. BACKGROUND

Jackie Lucas had a long and illustrious career with real party in interest, Baptist Healthcare, Inc. (Baptist), spanning almost two decades. She was hired in 1991 and achieved the titles of Vice President and Chief Information Officer in 2006. She reported directly to the company's Chief Executive Officer (CEO) from 2006 until 2013 when Baptist hired a new CEO, real party in interest Stephen Hanson. After Hanson's hiring, Lucas was demoted, and her employment was eventually terminated on August 1, 2013. Lucas filed suit against Baptist and Hanson alleging gender discrimination and retaliation, identity theft, and invasion of privacy. Dr. Gregory K. Collins is Lucas's husband. During the discovery process, Lucas identified Dr. Collins as her treating physician and an employer. Baptist sought to depose Dr. Collins on three specific topics: (1) his observations of Lucas's emotional health in the professional setting; (2) his medical treatment of Lucas; and (3) his role as her employer. Lucas objected to his deposition based on the husband-wife privilege provided in Kentucky Rule of Evidence (KRE) 504, which states in pertinent part:

> (a) Spousal testimony. The spouse of a party has a privilege to refuse to testify against the party as to events occurring after the date of their marriage. A party has a privilege to prevent his or her spouse from testifying against the party as to events occurring after the date of their marriage.
>
> (b) Marital communications. An individual has a privilege to refuse to testify and to prevent another from testifying to any confidential communication made by the individual to his or her spouse during their marriage. The privilege may be asserted only by the individual holding the privilege or by the holder's guardian, conservator, or personal representative. A

2

communication is confidential if it is made privately by an individual to his or her spouse and is not intended for disclosure to any other person.[1]

Baptist filed a motion to compel Dr. Collins's testimony.

The trial court granted in part and denied in part Baptist's Motion to Compel. The trial court ordered that Baptist could not depose Dr. Collins regarding Lucas's "private conversations and observations." In making this ruling, the trial court clearly enforced the marital communications privilege that is embodied in KRE 504(b). The trial court, however, ordered that Baptist could depose Dr. Collins on the following three topics: (1) Lucas's public manifestations of her emotional health, (2) the medical treatment he provided her, and (3) employment issues he observed as her employer.

Lucas filed a petition in the Court of Appeals for a writ to prohibit the trial court from enforcing the portion of its order that allowed Baptist to depose Dr. Collins on the three specified topics. The Court of Appeals granted the writ in part and denied the writ in part. The Court of Appeals granted the writ as it related to Dr. Collins's testimony of Lucas's public manifestations of emotional health, thus prohibiting that he be deposed on this topic. The Court of Appeals denied the writ as it related to the other two topics, therefore allowing deposition testimony regarding the medical treatment Dr. Collins provided Lucas and employment issues he observed as her employer.

---

[1] KRE 504(c) and (d) contain various exceptions to the privilege which are not applicable to the present case.

Lucas then appealed to this Court the portion of the Court of Appeals order denying her petition for a writ as it relates to Dr. Collins's deposition testimony regarding the medical treatment he provided her and employment issues he observed as her employer. She argues that those topics, and in fact, all deposition testimony by Dr. Collins, are privileged under KRE 504(a). We disagree.

## II. ANALYSIS

### A. *Writ Standard*

The issuance of a writ is an extraordinary remedy, and we have always been cautious and conservative in granting such relief. *Grange Mut. Ins. v. Trude,* 151 S.W.3d 803, 808 (Ky. 2004). Writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise." *Id.* This second class also usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted." *Id.* There are, however, special cases within the second class of writs that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is necessary "in the interest of orderly judicial

4

administration." *Independent Order of Foresters v. Chauvin*, 175 S.W.3d 610, 616 (Ky.2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961)). Even in these special cases, the party seeking a writ must show that there is no adequate remedy on appeal. *Id.* at 617. This Court reviews appeals from the denials of writs based on questions of law *de novo. Shafizadeh v. Bowles*, 366 S.W.3d 373, 375 (Ky. 2011) (citations omitted).

Here, there is no argument that the lower court acted without jurisdiction. Therefore, this case falls under the second class of writs. Both types of writs within the second class require an error by the trial court. In the present case, the trial court did not err and, therefore, a writ is not appropriate. The trial court was correct in prohibiting deposition testimony regarding Lucas's "private conversations and observations" as this testimony is protected under the marital communications privilege found in KRE 504(b). The trial court was also correct in allowing, within appropriate parameters, deposition testimony by Dr. Collins regarding (1) Lucas's public manifestations of her emotional health, (2) the medical treatment he provided her, and (3) employment issues he observed as her employer, as these topics are not necessarily privileged. Therefore, we deny Lucas's writ in whole.

### B. KRE 504

To reach our conclusion that the trial court did not err, we must undertake an analysis of KRE 504, specifically KRE 504(a). The spousal testimony privilege found in KRE 504(a) and the marital communications privilege found in KRE 504(b) are two separate privileges. *Slaven v.*

5

*Commonwealth*, 962 S.W.2d 845, 852 (Ky. 1997). The spousal testimony privilege does not depend on the confidential nature of communications that occur between a husband and wife. *Estes v. Commonwealth*, 744 S.W.2d 421, 424 (Ky. 1987) (*citing* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 5.05[a], at 121 (2nd ed. 1984) (*overruled in part on other grounds by Slaven*, 962 S.W.2d at 852). Further, the privilege neither applies to favorable testimony, nor to impeachment testimony. The spousal testimony privilege is, however, limited to testimony "against" the party-spouse. This is clear in the plain language of the rule. Richard H. Underwood & Glen Weissenberger, *Kentucky Evidence Courtroom Manual* 258 (2018-2019). Whether testimony is "against" the party-spouse and thus privileged requires an inquiry into the individual facts to be elicited during the testimony of the non-party spouse.

The commentary to the 1989 Evidence Rules Study Committee's final draft of the Kentucky Rules of Evidence fortifies this conclusion. The relevant portion of the final draft of the rule was as follows: "The spouse of an accused in a criminal proceeding has a privilege to refuse to testify **against** the accused spouse as to events occurring after the date of their marriage." (Emphasis added). In the commentary for that draft rule, the Committee explains:

> Prior Kentucky law provided that a spouse could not be compelled to testify for or against another spouse. This "privilege not to testify" was rooted in the common law rule rendering spouses incompetent to testify against one another. This rule, by contrast, is **limited** to: (1) criminal cases; **(2) where the testimony is adverse to the accused;** and (3) where the events occur after the marriage.

(Emphasis added).

It is noteworthy that the common law version of this rule was an absolute privilege not to testify. The final draft of the rule was meant to *limit* that common law absolute privilege. The underlying theory for the common law rule was that spouses were not competent to testify against each other because they were legally "one" (i.e., coverture, a theory that has long since been rejected by the courts).[2] In fact, in discussing the spousal testimony privilege that was later codified in KRE 504(a), this Court stated,

> [a]t its very best, the rule that one party to a marriage cannot be compelled to testify against the other . . . is one of the most ill-founded precepts to be found in the common law. It is enough that it continues to exist at all. When it is encountered it is better to be trimmed than enlarged.

*Wells v. Commonwealth* 562 S.W.2d 622, 624 (Ky. 1978).

By imposing the *limitation* that the testimony be "against" the party-spouse, the Committee intended that the testimony must be truly adverse to the spouse to be privileged, as is reflected in the drafters' commentary to that final draft rule. When the rules became effective in 1992, KRE 504 was expanded from the final draft rule quoted above to include language applying the privilege to civil cases and permitting both the witness-spouse and the

---

[2] Indeed, the uniquely anachronistic roots of the spousal privilege provide additional cause for scrutiny when applying this rule in the modern age. *See* Katherine O. Eldred, *"Every Spouse's Evidence": Availability of the Adverse Spousal Testimonial Privilege in Federal Civil Trials*, 69 U. Chi. L. Rev. 1319, 1332 (2002) (citing *Trammel v. U.S.*, 445 U.S. 40, 44 (1980) ("The testimonial privilege as it evolved in the seventeenth century and beyond joined two strands of legal thought. First, an interested party could not testify in litigation, and second, a wife, considered part of a single legal existence with her husband, could not testify for him.")).

party-spouse to invoke the privilege. However, although the 1992 version of KRE 504 expanded the rule beyond the scope of the 1989 draft rule in some respects, the Court maintained the "testify against" language that was present in the Committee's original draft. It is reasonable to conclude that, by keeping the "testify against" language in the rule, the Court also intended to limit the common law rule to testimony that was truly adverse to the party-spouse and not all testimony. This interpretation would further the modern justification of marital harmony while striking a balance with the truth-finding function of the judicial system.

Because the spousal testimony privilege only applies to adverse testimony, to determine whether the privilege protects particular testimony, the trial court must undertake a fact-specific analysis. The Eighth Circuit Court of Appeals provides a good example of this in what could be called a "question-by-question approach." In *In re Martenson*, the Eighth Circuit Court of Appeals upheld the trial court's finding of contempt for appellant's failure to answer deposition questions. 779 F.2d 461, 463 (8th Cir. 1985). In so holding, the court reasoned that the appellant failed to demonstrate how her anticipated testimony would be adverse to her spouse. The court observed that "the privilege is not a general one. It must be asserted as to particular questions. The privilege is not available unless the anticipated testimony would in fact be adverse to the nonwitness spouse." *Id.* (quotation and citation omitted). This is a sound approach, and one that is already in practice in many parts of the Commonwealth. The *Martenson* court went on to require that "more than a

8

speculative threat of injury to the spouse appear in the record to support a valid claim of privilege." *Id.*

The United States District Court, Eastern District of Michigan presents an additional example of a "question-by-question" approach in *Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, at *1 (E.D. Mich. Aug. 4, 2010). In that case, the court found that the spouses:

> are free to assert appropriate claims of privilege in response to particular questions, and to make a separate record in the event that Plaintiffs' counsel challenges any such claim of privilege. The circumstances are rare which justify an order that a deposition not be taken at all, and the existence of privilege is not one of those circumstances. Rather, the normal practice is to allow the deposition to go forward, with the parties creat[ing] a record and furnish[ing] a context for any disputes arising from the deponent's assertion of a privilege. This practice enables the Court to rule upon a concrete record in determining the validity of a claim of privilege.

(Internal citations and quotations omitted).

As in *Martenson* and *Flagg*, the trial court's order in this case compelled deposition testimony, not trial testimony. *See also, U.S. v. Cordes*, No. 15-cv-10040, 2016 WL 1161524, at *3 (E.D. Mich. Mar. 23, 2016) (denying motion to quash subpoenas on the grounds of the testimonial spousal privilege); *Abbott v. Kidder, Peabody & Co.*, No. 97 C 3251, 1997 WL 337228, at *4 (E.D. Ill. June 16, 1997) (dismissing a claim of spousal immunity seeking to limit a deposition). Depositions are used as a pretrial discovery tool. They can be used to discover any information that is relevant to the pending action or that is reasonably calculated to lead to the discovery of relevant information, even if that

9

information would be inadmissible as evidence at trial. CR 26.02. Trial judges make pretrial rulings regarding the admissibility of evidence discovered through depositions and can prohibit introduction of evidence at trial that is inadmissible. This additional safeguard is yet another reason to permit the deposition testimony at issue in this case. [3]

In light of the above persuasive federal authority and what this Court believes is already the practice in many areas of the Commonwealth, this Court finds that the appropriate application of KRE 504(a) is to allow spouses to assert the privilege on a case-by-case and even question-by-question basis. Under KRE 504, in the case before us today, the trial court's order appropriately limited Dr. Collins's deposition testimony. It allowed the deposition to move forward, subject to additional objections or assertions of privilege. The trial court did not err in issuing that order.

## III. CONCLUSION

For the reasons stated above, we affirm the Court of Appeals in part and reverse the Court of Appeals in part. Lucas and her husband should be permitted to assert their spousal privilege in response to specific deposition questions as appropriate. The trial court is fully capable and perfectly suited

---

[3] In Texas, even the attorney-client privilege does not allow an attorney to entirely avoid a deposition concerning his representation because some of the matters may be privileged. Rather, the privilege only applies to those communications intended to be kept confidential. Stephen Goode & M. Michael Sharlot, *Article v: Privileges*, 30 Hous. L. Rev. 489, 527 (1993). The same can be said here—the adverse testimonial martial privilege is not intended to foreclose any opportunity to depose, but rather to preclude questions that invade the marital relationship.

to adjudicate any dispute which may arise regarding the appropriate application of the privilege. The trial court shall apply KRE 504 when assessing the evidence or ruling on any motions that may arise before, during, or after trial.

All sitting. Minton, C.J.; Hughes, Keller, Lambert and VanMeter, JJ., concur. Wright, J., dissents by separate opinion in which Buckingham, J., joins.

WRIGHT, J., DISSENTING: I agree with the majority that the trial court must determine on a "case-by-case and even question-by-question basis" which of the matters on which Baptist seeks to depose Collins would result in testimony "against" Lucas. However, I disagree that this amounts to a denial of the writ. Therefore, I dissent.

Here, the trial court ordered "the privilege would not apply to [Lucas's] medical treatment and post-separation employment issues." It also ruled the privilege would not apply to "outward indications of her emotional health that occurred in public or at others' homes." The trial court's ruling that the privilege does not apply is incorrect as to testimony that would be "against" Lucas. KRE 504(a) reads "Spousal testimony. The spouse of a party has a privilege to refuse to testify against the party as to events occurring after the date of their marriage. A party has a privilege to prevent his or her spouse from testifying against the party as to events occurring after the date of their marriage." The *only* qualification in the rule is that the testimony must be "against" the spouse to be privileged. As noted, the trial court ruled the

11

privilege would not apply in medical treatment, employment issues, and emotional-health indications in public—even if the testimony would be against Lucas. It was inappropriate for the trial court to add limitations not indicated by the language of the rule.

The majority holds, "[u]pon remand, Lucas and her husband should be permitted to assert their spousal privilege in response to specific deposition questions as appropriate." Under the rule, assertion of the privilege prohibits testimony which amounts to Collins "testify[ing] against" Lucas. Therefore, the privilege applies if the trial court finds the questions would elicit testimony "against" Lucas. Here, the trial court ruled depositions could proceed, as the privilege *did not apply*. Because the trial court has yet to properly determine whether the privilege applies, I would issue a writ directing the trial court to rule on whether the specific questions would amount to "testimony against" Lucas. If so, the privilege applies and the testimony may not be elicited.

Buckingham, J., joins.

COUNSEL FOR APPELLANT:

Robert W. Bishop
John Saoirse Friend
Bishop Friend, P.S.C.

Tyler Zachary Korus
Robert Roark, PLLC


COUNSEL FOR APPELLEE:

Hon. Judith E. McDonald-Burkman
Jefferson Circuit Court Judge


COUNSEL FOR REAL PARTIES IN INTEREST, BAPTIST HEALTHCARE, INC.
AND STEPHEN HANSON:

Donna King Perry
Jeremy Stuart Rogers
Alina Klimkina
Dinsmore & Shohl LLP