UNITED STATES of America,
Petitioner, Appellee,

v.

Rafia Feghi YERARDI, Respondent,
Appellant.

No. 99–1063.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 1999.

Decided Sept. 21, 1999.

**16**

Walter B. Prince with whom Peckham, Lobel, Casey, Prince & Tye LLP was on brief, for respondent-appellant.

Richard L. Hoffman, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for petitioner-appellee.

Before SELYA, Circuit Judge, CYR, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

This appeal, which presents difficult questions concerning the adverse spousal testimony privilege, arises out of the following facts. The appellant, Rafia Feghi, is married to Joseph A. Yerardi, Jr. In October 1993, Joseph Yerardi was indicted in the district court on 71 counts, including money laundering, extortion, witness intimidation, operating an illegal gambling business, racketeering and criminal forfeiture. 18 U.S.C. §§ 2, 892, 894, 982, 1503, 1512, 1955–56, 1962–63. In due course, the forfeiture counts resulted in ancillary proceedings that are the focus of this appeal.

Yerardi was released on bail in July 1994, and Feghi signed a $1.5 million appearance bond to secure his presence. When Yerardi was later charged with violating conditions of his release, the government sought forfeiture of the bond. Feghi testified at the forfeiture proceeding in February 1995, invoking certain testimonial privileges but (says the government) not invoking the adverse spousal testimony privilege. The government now relies on this failure as precluding later assertion of the privilege.

On May 1, 1995, Yerardi entered into a written plea agreement with the government. Pursuant to that agreement, Yerardi pled guilty to all counts of the indictment and, in accordance with 18 U.S.C. §§ 982, 1963, agreed to forfeit $916,000. He also consented to the entry of an asset discovery order, including the deposition of witnesses and the production of documents and related materials deemed necessary by the U.S. Attorney to implement the forfeiture agreement. At sentencing, however, Yerardi's counsel maintained Yerardi's earlier position that his only asset was $5,000 worth of jewelry.

The government believes that Feghi now controls or knows of assets that once belonged to Yerardi but have since been forfeited to the United States, and that Feghi would not qualify as a bona fide purchaser for value. 18 U.S.C. § 1963(l)(6)(B); 21 U.S.C. § 853(n)(6)(B). Further, the government wants to locate other Yerardi assets, which Feghi may

control or know of, that could be available to the government to make up the value of any directly forfeited assets that can no longer be found. 18 U.S.C. § 1963(m); 21 U.S.C. § 853(p). Apparently, the government sought Feghi's informal cooperation but was rebuffed.

Accordingly, the government served a subpoena duces tecum on Feghi in October 1995, later enforced in part by the district court, and it deposed Feghi on March 22, 1996.[1] Ultimately, in response to the enforced document requests, Feghi took the position that she had no such documents, and she declined in deposition to answer further questions about the requests, as well as direct questions on a number of different issues concerning Yerardi's assets, transfers of money between Yerardi and Feghi, actions taken by Feghi pursuant to the power of attorney that Yerardi had given to her, and similar matters. The basis for these refusals was Feghi's assertion of the adverse spousal testimony privilege.

In April 1996, the government moved to compel Feghi to answer its questions. The magistrate judge allowed the government's motion to compel on September 26, 1996, primarily on the ground that the prospect of future criminal prosecution of Yerardi (*e.g.*, for tax evasion) was too speculative to support the privilege, and also on the ground that Yerardi had disclaimed any interest in the assets held by Feghi. The district court affirmed the magistrate judge's order on May 5, 1997, when it rejected Feghi's motion for reconsideration.

Feghi continued to refuse to testify and invited the district court to hold her in contempt so that she could test its privilege ruling on appeal.[2] After a hearing on

December 21, 1998, the district court held Feghi in contempt for refusing to answer, and it imposed prospectively civil penalties on Feghi, rising after two weeks to $1,000 per day, to compel obedience. Thereafter, on April 30, 1999, this court stayed the district court's contempt order pending Feghi's appeal. Although we thought it a close question whether Feghi was likely to prevail, accumulating fines (unless stayed) appeared likely to force Feghi to answer immediately and thereby deprive her of an effective appeal.

■ Although contempt rulings are sometimes said to be reviewable for "abuse of discretion," the standard depends upon the precise issue or issues presented: abstract issues of law are reviewed *de novo* and determinations of raw fact are tested under the clearly erroneous standard. *Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 n. 1 (1st Cir.1998). Whether a future criminal prosecution of Yerardi based on Feghi's testimony is "speculative" is the kind of "mixed" question on which the district court's assessment is often, although not always, given weight. *See In re Extradition of Howard*, 996 F.2d 1320, 1328 (1st Cir.1993).

■ In federal criminal cases, issues of privilege are resolved by judge-made rules based on common law principles, except where the Constitution or other federal enactments resolve the issue. Fed.R.Evid. 501. As revamped by the Supreme Court in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the privilege against adverse spousal testimony gives the witness-spouse a privilege not to testify against the defendant-spouse in criminal or related proceedings, subject to certain exceptions and to waiver. *See Larkin, Federal Practice: Federal Testimoni-*

---

1. The asset discovery proceedings at issue here are authorized by 18 U.S.C. § 1963(k) and 21 U.S.C. § 853(m) (as incorporated by 18 U.S.C. § 982(b)), and are ancillary to the criminal case in which Yerardi pleaded guilty and agreed to forfeit $916,000. 18 U.S.C. §§ 982, 1963.

2. The district court's ruling rejecting the claim of privilege was interlocutory, and an interim appeal by Feghi to seek review of the privilege ruling was dismissed by this court. *United States v. Rafia Feghi*, No. 97–1884 (1st Cir. Oct. 7, 1997).

*al Privileges* § 4.02 (1999). The privilege is a companion to, but distinct from, the privilege protecting confidential communications between husband and wife. *See id.* § 4.03.

■ At the threshold, the government urges that the privilege has been waived because Yerardi in his plea agreement consented both to the forfeiture and to full discovery by the government of all information needed to implement the forfeiture. The plea agreement might be read as an implicit waiver of the privilege by Yerardi. However, the Supreme Court made clear in *Trammel* that the privilege against adverse spousal testimony belongs not to the defendant-spouse, here Yerardi, but rather to the witness-spouse, here Feghi. *See Trammel*, 445 U.S. at 53, 100 S.Ct. 906. Yerardi as the defendant-spouse thus had no privilege to waive and, far more importantly, he had no authority to waive Feghi's privilege to refuse to testify adversely to him.

■ Because the privilege is rooted in a dual desire to protect marital harmony and to avoid the unseemliness of compelling one spouse to testify against the other in a criminal proceeding, *id.* at 44–45, 52–53 & n. 12, 100 S.Ct. 906, the privilege is limited to testimony that is adverse to the legal interests of the defendant-spouse, 8 Wigmore, *Evidence* § 2234, at 231 (McNaughton rev.1961). Pointing again to Yerardi's plea agreement, the government contends that testimony cannot be adverse where the defendant-spouse has consented to it. It is hard to see how a future criminal prosecution of Yerardi—the extent of the threat is discussed below—would not be "adverse" to his legal interests.

■ In a separate but related objection, the government claims that Feghi herself waived the privilege by earlier testifying at Yerardi's bail forfeiture hearing. There, Feghi answered certain questions regarding her joint purchase and sale of property with Yerardi, her receipt of money from Yerardi, and her bank deposits and trans-

fers. The government concedes that Feghi did not at any point expressly waive the privilege, which certainly she could do; but it asserts that by answering questions in the same general area without asserting the privilege, she has engaged in conduct tantamount to waiver of the privilege.

■ The concept of waiver by conduct exists, but often amounts simply to a determination that the privilege holder's conduct makes it unfair to allow subsequent assertion of the privilege. *See Developments in the Law—Privileged Communications*, 98 Harv.L.Rev. 1450, 1629–31 (1985). Probably the most common example is a privilege holder's effort to answer some questions in a subject area (usually those that serve the privilege holder's interests) but not others (those that harm the privilege holder's interest). *Id.* at 1633–35. Such a pick-and-choose approach may seem unfair in general or because it distorts the evidence that is presented to the factfinder.

In all events, the government's claim that Feghi waived her privilege by her earlier testimony cannot be resolved, as the government assumes, simply by asking whether Feghi testified previously about certain property or bank transactions relating to her husband. The privilege applies only to adverse testimony, and conceivably some (or all) of the questions answered in the bail hearing may not have been adverse to Yerardi. It would require a fairly detailed comparison of the prior answers given and the more recent questions that Feghi refused to answer to determine whether Feghi's prior answers precluded privilege claims now. The government has not provided any such analysis.

■ In another set of threshold arguments, the government says that as a matter of law the adverse spousal testimony privilege should not be invocable in criminal forfeiture proceedings. It argues that this proceeding to achieve the forfeiture is itself "more civil than criminal," affecting

only a property interest. The government adds that the legislative history of the RICO statute, *see* H.R.Rep. No. 98–1030, at 195 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3378, underscores the need to make forfeiture proceedings effective against efforts by organized crime figures to confide assets to family members.

The privilege is almost always invoked only in criminal proceedings in which one spouse is called to testify against the other, and understandably so since criminal jeopardy is the threat with which the privilege is concerned. And some formulations of the privilege, and dicta in some of the cases, assume that the privilege could never be asserted in a civil case.[3] Interestingly, it is hard to find a square holding to this effect, and one can think of cases that would test that assumption (say, a government civil fraud case where a criminal prosecution might plausibly follow). *Cf. Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543–44 (7th Cir.1977) (reserving issue in civil tax proceeding and finding it inapplicable where immunity granted).

We need not pursue the issue because, even if the privilege can only be asserted "in" a criminal proceeding, the proceeding in which Feghi is here sought to be questioned is ancillary to a criminal case and seeks to recover a penalty under criminal forfeiture provisions. *See* 18 U.S.C. §§ 982, 1963. There are civil forfeiture remedies, *see id.* §§ 984, 1964, but the government did not invoke them against Yerardi. Since this case is an adjunct to a criminal proceeding and the questioning (as we shall see) raises an appreciable risk of contributing to future criminal prosecution of Yerardi, it is hard to see why we should strain to re-label the matter as "civil."

The government cites us to a few cases in which courts have treated criminal forfeitures as "civil" for limited purposes, *see United States v. Lavin*, 942 F.2d 177, 181–82 (3d Cir.1991) (allowing the longer civil period to appeal from a forfeiture order), or at least as separable from the main criminal action, *see United States v. Hurley*, 63 F.3d 1, 23–24 (1st Cir.1995) (filing of appeal from criminal conviction did not prevent later forfeiture order). But the issue in each case was different than that posed here and, in each case, there was a colorable policy reason for the distinction drawn. *No such reason is proffered in this case.*

■ Surely Congress wanted RICO forfeitures to be effective, but there is no indication that allowing the privilege to Feghi or other spouses will compromise this aim. If Feghi's testimony is essential to recovering forfeited property, which it may be, the government (as we shall explain) need only file an affidavit providing the same protection normally afforded when testimony is compelled from a witness who claims the privilege against self-incrimination. As for the legislative history, the government points to nothing to suggest that Congress intended to suspend or pare back existing privileges.

This brings us to the district court's holding that the threat Feghi's testimony posed to Yerardi was too speculative to support her assertion of the privilege here. The district court added: "Questions that may arise if the government at some time in the future attempts to use Ms. Feghi's testimony as a basis for an attempt to impose further civil or criminal penalties on her husband are more properly presented to the court when they have become less speculative than they now are." On appeal, Feghi says that her concerns were not too speculative.

---

**3.** *See Engelmann v. NBC*, No. 94–Civ.5616, 1995 WL 214500, at *2 (S.D.N.Y. Apr. 10, 1995); *United States v. Premises Known as 281 Syosset Woodbury Road*, 862 F.Supp. 847, 851–52 (E.D.N.Y.1994), *aff'd*, 71 F.3d 1067 (2d Cir.1995); Proposed Fed.R.Evid. 505(a) ("An accused in a *criminal* proceeding has a privilege to prevent his spouse from testifying against him.") (emphasis added); Larkin, *supra*, § 4.02[3], at 4–9.

The district court assumed, and we agree, that the privilege could not be justified merely because Feghi's testimony might help the government recover former or present assets of Yerardi subject to criminal forfeiture. Yerardi had already disclaimed any interest in property, apart from his $5,000 in jewelry. Further, even if he had not, we are doubtful that the rationale of the privilege would be offended by making Feghi assist the government in locating those of Yerardi's assets subject to forfeiture if this were the only adverse consequence said to flow from the testimony.

After all, as *Trammel* explained, the main concerns of the privilege are the threat to marital harmony and the arguable unseemliness of requiring one spouse to assist in the *criminal* conviction or incarceration of the other spouse. Feghi could readily be called by the plaintiff in a civil damage action to establish that Yerardi's negligence had caused a traffic accident in which the plaintiff was injured, and Feghi could not ordinarily assert the privilege in such a case even though her testimony might lead to a large damage award against Yerardi. *See generally* Larkin, *supra*, § 4.02[3], at 4–9. We see no reason why recovery of forfeited assets should be treated differently.

However, Feghi's purported fear is not confined to Yerardi's loss of property; she also asserted in the district court, and argues forcefully in this court, that various of the questions posed by the government could lead to subsequent criminal prosecution of Yerardi for tax evasion or related crimes. This is not on its face a farfetched concern: if Yerardi has been concealing assets, one might also suppose that he has not been reporting to the Internal Revenue Service income derived from those assets and might be subject to tax evasion charges. 26 U.S.C. § 7201. Other offenses based on such concealment can also be imagined.

The government says that Feghi is not really concerned about such a prosecution, arguing that she did not take up the government's earlier offer to negotiate some form of immunity. At oral argument, the government tendered a letter in which it offered to give Feghi, in exchange for her complete and truthful testimony, a written assurance that it would not use her compelled testimony directly in any future criminal prosecution of her husband. The letter explicitly refused to promise Feghi that her testimony would not be used indirectly, *i.e.*, to generate other evidence that could be used in such a prosecution.[4]

We think the government's immunity proposal underscores the fact that a further criminal prosecution of Yerardi is a realistic possibility, and that Feghi's answers could contribute to that prosecution. If this were not so, it is hard to see why the government's letter would explicitly reserve to it the right to use Feghi's testimony indirectly, *i.e.*, through "fruits" evidence derived from it, in a future prosecution. Whatever weight might generally be accorded to the district court's finding, we cannot agree that the threat of an adverse affect on Yerardi's legal interests is so clearly "speculative" as to defeat the privilege.

It is a different question whether protection against indirect use is required. We arguably assumed so in *In re Snoonian*, 502 F.2d 110 (1st Cir.1974); there, we held that the adverse spousal testimony privilege was overcome where the government filed an affidavit promising that it would not use either directly or indirectly the compelled grand jury testimony of one spouse in subsequent criminal proceedings against the other spouse. *See id.* at 112–13. Other courts have adopted the same approach. *See In re Grand Jury*, 111 F.3d 1083 (3d Cir.1997); *In re Grand Jury*

---

4. The letter was formally submitted to the court incident to the government's now pending motion filed August 3, 1999, to lift the stay. Our disposition of this case moots that motion.

*Subpoena* (*Ford v. United States*), 756 F.2d 249 (2d Cir.1985). We think it is fair to insist upon such an affidavit in the present case.

The government says that, without the reservation permitting indirect use, a burden would rest upon it to show—in any future prosecution of Yerardi—that *other* evidence it might offer against him apart from Feghi's direct testimony was not derived from that testimony. However, this is a burden that the prosecution customarily carries, whenever it compels privileged testimony through a grant of use immunity, by showing that it has an independent source for the "other evidence." *See, e.g., United States v. Serrano*, 870 F.2d 1 (1st Cir.1989). Only in peculiar circumstances has it proved to be an insuperable burden. *See United States v. North*, 920 F.2d 940 (D.C.Cir.1990). It is worth adding that the government controls the scope of its questioning, which can be tailored to limit the tainting of future evidence.

■ Thus far, we have treated the questions that the government seeks to compel Feghi to answer as if they were all of a piece. Customarily, issues of privilege are resolved on a question-by-question basis, as the privilege may be justified as to some questions but not as to others. *In re Lochiatto*, 497 F.2d 803, 805 n. 3 (1st Cir. 1974). However, the government has not argued that all of its questions are benign, and most addressed to the concealment of assets are not likely to be. Thus, we cannot avoid the issues posed by this appeal.

■ If on remand the government provides an unconditional *Snoonian* affidavit, that would eliminate the privilege across the board for any questions hereafter put to Fehgi.[5] If instead the government declines to provide an affidavit, it remains free to re-notice Feghi's deposition and insist on her assertion of the privilege on a question-by-question basis. However, this assumes that the government has questions to ask Feghi, the answers to which could not plausibly threaten the legal interests of Yerardi in a future criminal prosecution relating to any concealed assets. Whether the government has such questions is unclear.

■ Some formulations of the adverse spousal testimony privilege state or imply not only that the proceedings in which the testimony is compelled must be criminal, but that the adverse effects on the other spouse must be felt in the *same* proceeding. *See* 8 Wigmore, *supra*, § 2234, at 231. Here, the proceeding is criminal, Yerardi is a party, but the only likely adverse effect—apart from the irrelevant loss of property—is future prosecution of Yerardi for tax evasion or like crimes in *another* case. Since the effect is to be felt in a different proceeding, the government contends that for this reason as well the spousal privilege should not be allowed.

Certainly, the line could be drawn in this fashion. Yet, *Snoonian* itself holds that a spouse can assert the privilege in a grand jury proceeding to which no private person is "a party" even though the adverse effect on the other spouse would occur in what is formally a different proceeding, namely, the later prosecution of that spouse. *See In re Snoonian*, 502 F.2d at 112. It may be generalization enough to say that the relationship between two proceedings, which itself bears on the probability of an adverse effect, is likely to be a matter of degree, and that a case-by-case resolution will have to do for the present.

■ Here, we think that the connection between the government's criminal forfeiture proceeding directed against Yerardi and the possible prosecution of him

---

5. We refer deliberately to an affidavit tendered to the court rather than a letter agreement offered to Feghi. The government has no right in this context to insist on an unconditional commitment by Feghi to testify fully (and, indeed, some other testimony may be subject to other privileges). At the same time, Feghi's consent to the bargain or lack thereof is irrelevant: if the affidavit is filed, the privilege is overcome on the facts before us.

(*e.g.*, for tax evasion) relating to concealment of the same assets is close enough that the privilege may fairly be asserted in the forfeiture proceeding to guard against the use of Feghi's testimony to convict Yerardi thereafter. Like most privileges that obstruct evidence, the privilege against adverse spousal testimony is construed strictly, *Trammel*, 445 U.S. at 50, 100 S.Ct. 906; but *Trammel* deliberately preserved the privilege, and it retains enough force to be respected in the present case where, as we have noted, the government can remove it in a one-sentence affidavit.

Finally, a word should be said about the district court's statement, already quoted, that another reason for compelling Feghi to answer now is that a trial court would retain the power later to exclude her testimony if offered in a new prosecution of Yerardi. *See also United States v. George*, 444 F.2d 310, 314 (6th Cir.1971) (similar suggestion). The same course (*i.e.*, deferral) could also be taken as to "fruits" evidence. The government, which needless to say prefers an outright rejection of the privilege claim, has not stressed this possibility; and it is not clear whether the district court viewed it as an alternative ground for denying the privilege or simply as a pertinent consideration.

■ Such a reservation might at first seem a satisfactory way of resolving hard privilege issues that turn on predicted future impact, but it is a solution with some weaknesses. In general, a privilege once established is overcome only where co-extensive protection (*e.g.*, immunity) is assured at the time the answer is compelled. *Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) (White, J., concurring in the result). Further, the core concerns of the privilege with which we deal here—marital harmony and seemliness—would not be fully satisfied by compelling potentially adverse testimony now and promising merely to *consider* later exclusion of it or its fruits in a future trial of the other spouse.

The government, as just noted, has not pressed on us the district court's suggestion that a final ruling on the privilege issue might be deferred. While postponement might occasionally serve the prosecutor's interests, in other cases the prosecutor is far better off with a definitive ruling at the outset, thereby avoiding (or at least lessening) the risk of conferring unintended immunity. *See generally Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Ellis v. United States*, 416 F.2d 791 (D.C.Cir.1969). Whether deferral might ever be a sound solution we leave for another occasion.

Accordingly, we *vacate* the present order of contempt and *remand* the case to the district court so that the government may furnish the necessary affidavit, if it is so minded. If it does so, then the adverse spousal privilege should be deemed overcome and further delay on this ground by Feghi need not be tolerated. Failing that, the government is still entitled to depose Feghi, but she is entitled to invoke the adverse spousal testimony privilege on a question-by-question basis and subject to district court scrutiny under standards set forth above.

*It is so ordered.*