USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1063

 UNITED STATES OF AMERICA,

 Petitioner, Appellee,

 v.

 RAFIA FEGHI YERARDI,

 Respondent, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Cyr, Senior Circuit Judge,
 and Boudin, Circuit Judge.
 
 
 
 
 Walter B. Prince with whom Peckham, Lobel, Casey, Prince & Tye
LLP was on brief for respondent-appellant.
 Richard L. Hoffman, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief for
petitioner-appellee.

September 21, 1999

 
 

 BOUDIN, Circuit Judge. This appeal, which presents
difficult questions concerning the adverse spousal testimony
privilege, arises out of the following facts. The appellant, Rafia
Feghi, is married to Joseph A. Yerardi, Jr. In October 1993,
Joseph Yerardi was indicted in the district court on 71 counts,
including money laundering, extortion, witness intimidation,
operating an illegal gambling business, racketeering and criminal
forfeiture. 18 U.S.C. 2, 892, 894, 982, 1503, 1512, 1955-56,
1962-63. In due course, the forfeiture counts resulted in
ancillary proceedings that are the focus of this appeal.
 Yerardi was released on bail in July 1994, and Feghi
signed a $1.5 million appearance bond to secure his presence. When
Yerardi was later charged with violating conditions of his release,
the government sought forfeiture of the bond. Feghi testified at
the forfeiture proceeding in February 1995, invoking certain
testimonial privileges but (says the government) not invoking the
adverse spousal testimony privilege. The government now relies on
this failure as precluding later assertion of the privilege.
 On May 1, 1995, Yerardi entered into a written plea
agreement with the government. Pursuant to that agreement, Yerardi
pled guilty to all counts of the indictment and, in accordance with
18 U.S.C. 982, 1963, agreed to forfeit $916,000. He also
consented to the entry of an asset discovery order, including the
deposition of witnesses and the production of documents and related
materials deemed necessary by the U.S. Attorney to implement the
forfeiture agreement. At sentencing, however, Yerardi's counsel
maintained Yerardi's earlier position that his only asset was
$5,000 worth of jewelry. 
 The government believes that Feghi now controls or knows
of assets that once belonged to Yerardi but have since been
forfeited to the United States, and that Feghi would not qualify as
a bona fide purchaser for value. 18 U.S.C. 1963(l)(6)(B); 21
U.S.C. 853(n)(6)(B). Further, the government wants to locate
other Yerardi assets, which Feghi may control or know of, that
could be available to the government to make up the value of any
directly forfeited assets that can no longer be found. 18 U.S.C.
 1963(m); 21 U.S.C. 853(p). Apparently, the government sought
Feghi's informal cooperation but was rebuffed.
 Accordingly, the government served a subpoena duces tecum
on Feghi in October 1995, later enforced in part by the district
court, and it deposed Feghi on March 22, 1996. Ultimately, in
response to the enforced document requests, Feghi took the position
that she had no such documents, and she declined in deposition to
answer further questions about the requests, as well as direct
questions on a number of different issues concerning Yerardi's
assets, transfers of money between Yerardi and Feghi, actions taken
by Feghi pursuant to the power of attorney that Yerardi had given
to her, and similar matters. The basis for these refusals was
Feghi's assertion of the adverse spousal testimony privilege.
 In April 1996, the government moved to compel Feghi to
answer its questions. The magistrate judge allowed the
government's motion to compel on September 26, 1996, primarily on
the ground that the prospect of future criminal prosecution of
Yerardi (e.g., for tax evasion) was too speculative to support the
privilege, and also on the ground that Yerardi had disclaimed any
interest in the assets held by Feghi. The district court affirmed
the magistrate judge's order on May 5, 1997, when it rejected
Feghi's motion for reconsideration.
 Feghi continued to refuse to testify and invited the
district court to hold her in contempt so that she could test its
privilege ruling on appeal. After a hearing on December 21, 1998,
the district court held Feghi in contempt for refusing to answer,
and it imposed prospectively civil penalties on Feghi, rising after
two weeks to $1,000 per day, to compel obedience. Thereafter, on
April 30, 1999, this court stayed the district court's contempt
order pending Feghi's appeal. Although we thought it a close
question whether Feghi was likely to prevail, accumulating fines
(unless stayed) appeared likely to force Feghi to answer
immediately and thereby deprive her of an effective appeal.
 Although contempt rulings are sometimes said to be
reviewable for "abuse of discretion," the standard depends upon the
precise issue or issues presented: abstract issues of law are
reviewed de novo and determinations of raw fact are tested under
the clearly erroneous standard. Ocean Spray Cranberries, Inc. v.
PepsiCo, Inc., 160 F.3d 58, 61 n.1 (1st Cir. 1998). Whether a
future criminal prosecution of Yerardi based on Feghi's testimony
is "speculative" is the kind of "mixed" question on which the
district court's assessment is often, although not always, given
weight. See In re Extradition of Howard, 996 F.2d 1320, 1328 (1st
Cir. 1993).
 In federal criminal cases, issues of privilege are
resolved by judge-made rules based on common law principles, except
where the Constitution or other federal enactments resolve the
issue. Fed. R. Evid. 501. As revamped by the Supreme Court in
Trammel v. United States, 445 U.S. 40 (1980), the privilege against
adverse spousal testimony gives the witness-spouse a privilege not
to testify against the defendant-spouse in criminal or related
proceedings, subject to certain exceptions and to waiver. See 
Larkin, Federal Practice: Federal Testimonial Privileges 4.02
(1999). The privilege is a companion to, but distinct from, the
privilege protecting confidential communications between husband
and wife. See id. 4.03.
 At the threshold, the government urges that the privilege
has been waived because Yerardi in his plea agreement consented
both to the forfeiture and to full discovery by the government of
all information needed to implement the forfeiture. The plea
agreement might be read as an implicit waiver of the privilege by
Yerardi. However, the Supreme Court made clear in Trammel that the
privilege against adverse spousal testimony belongs not to the
defendant-spouse, here Yerardi, but rather to the witness-spouse,
here Feghi. See Trammel, 445 U.S. at 53. Yerardi as the
defendant-spouse thus had no privilege to waive and, far more
importantly, he had no authority to waive Feghi's privilege to
refuse to testify adversely to him.
 Because the privilege is rooted in a dual desire to
protect marital harmony and to avoid the unseemliness of compelling
one spouse to testify against the other in a criminal proceeding,
id. at 44-45, 52-53 & n.12, the privilege is limited to testimony
that is adverse to the legal interests of the defendant-spouse, 8
Wigmore, Evidence 2234, at 231 (McNaughton rev. 1961). Pointing
again to Yerardi's plea agreement, the government contends that
testimony cannot be adverse where the defendant-spouse has
consented to it. It is hard to see how a future criminal
prosecution of Yerardi--the extent of the threat is discussed below
--would not be "adverse" to his legal interests. 
 In a separate but related objection, the government
claims that Feghi herself waived the privilege by earlier
testifying at Yerardi's bail forfeiture hearing. There, Feghi
answered certain questions regarding her joint purchase and sale of
property with Yerardi, her receipt of money from Yerardi, and her
bank deposits and transfers. The government concedes that Feghi
did not at any point expressly waive the privilege, which certainly
she could do; but it asserts that by answering questions in the
same general area without asserting the privilege, she has engaged
in conduct tantamount to waiver of the privilege.
 The concept of waiver by conduct exists, but often
amounts simply to a determination that the privilege holder's
conduct makes it unfair to allow subsequent assertion of the 
privilege. See Developments in the Law--Privileged Communications,
98 Harv. L. Rev. 1450, 1629-31 (1985). Probably the most common
example is a privilege holder's effort to answer some questions in
a subject area (usually those that serve the privilege holder's
interests) but not others (those that harm the privilege holder's
interest). Id. at 1633-35. Such a pick-and-choose approach may
seem unfair in general or because it distorts the evidence that is
presented to the factfinder.
 In all events, the government's claim that Feghi waived
her privilege by her earlier testimony cannot be resolved, as the
government assumes, simply by asking whether Feghi testified
previously about certain property or bank transactions relating to
her husband. The privilege applies only to adverse testimony, and
conceivably some (or all) of the questions answered in the bail
hearing may not have been adverse to Yerardi. It would require a
fairly detailed comparison of the prior answers given and the more
recent questions that Feghi refused to answer to determine whether
Feghi's prior answers precluded privilege claims now. The
government has not provided any such analysis.
 In another set of threshold arguments, the government
says that as a matter of law the adverse spousal testimony
privilege should not be invokable in criminal forfeiture
proceedings. It argues that this proceeding to achieve the
forfeiture is itself "more civil than criminal," affecting only a
property interest. The government adds that the legislative
history of the RICO statute, see H.R. Rep. No. 98-1030, at 195
(1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3378, underscores the
need to make forfeiture proceedings effective against efforts by
organized crime figures to confide assets to family members.
 The privilege is almost always invoked only in criminal
proceedings in which one spouse is called to testify against the
other, and understandably so since criminal jeopardy is the threat
with which the privilege is concerned. And some formulations of
the privilege, and dicta in some of the cases, assume that the
privilege could never be asserted in a civil case. Interestingly,
it is hard to find a square holding to this effect, and one can
think of cases that would test that assumption (say, a government
civil fraud case where a criminal prosecution might plausibly
follow). Cf. Ryan v. Commissioner of Internal Revenue, 568 F.2d
531, 543-44 (7th Cir. 1977) (reserving issue in civil tax
proceeding and finding it inapplicable where immunity granted).
 We need not pursue the issue because, even if the
privilege can only be asserted "in" a criminal proceeding, the
proceeding in which Feghi is here sought to be questioned is
ancillary to a criminal case and seeks to recover a penalty under
criminal forfeiture provisions. See 18 U.S.C. 982, 1963. There
are civil forfeiture remedies, see id. 984, 1964, but the
government did not invoke them against Yerardi. Since this case is
an adjunct to a criminal proceeding and the questioning (as we
shall see) raises an appreciable risk of contributing to future
criminal prosecution of Yerardi, it is hard to see why we should
strain to re-label the matter as "civil."
 The government cites us to a few cases in which courts
have treated criminal forfeitures as "civil" for limited purposes,
see United States v. Lavin, 942 F.2d 177, 181-82 (3d Cir. 1991)
(allowing the longer civil period to appeal from a forfeiture
order), or at least as separable from the main criminal action, see
United States v. Hurley, 63 F.3d 1, 23-24 (1st Cir. 1995) (filing
of appeal from criminal conviction did not prevent later forfeiture
order). But the issue in each case was different than that posed
here and, in each case, there was a colorable policy reason for the
distinction drawn. No such reason is proffered in this case.
 Surely Congress wanted RICO forfeitures to be effective,
but there is no indication that allowing the privilege to Feghi or
other spouses will compromise this aim. If Feghi's testimony is
essential to recovering forfeited property, which it may be, the
government (as we shall explain) need only file an affidavit
providing the same protection normally afforded when testimony is
compelled from a witness who claims the privilege against self-
incrimination. As for the legislative history, the government
points to nothing to suggest that Congress intended to suspend or
pare back existing privileges.
 This brings us to the district court's holding that the
threat Feghi's testimony posed to Yerardi was too speculative to
support her assertion of the privilege here. The district court
added: "Questions that may arise if the government at some time in
the future attempts to use Ms. Feghi's testimony as a basis for an
attempt to impose further civil or criminal penalties on her
husband are more properly presented to the court when they have
become less speculative than they now are." On appeal, Feghi says
that her concerns were not too speculative.
 The district court assumed, and we agree, that the
privilege could not be justified merely because Feghi's testimony
might help the government recover former or present assets of
Yerardi subject to criminal forfeiture. Yerardi had already
disclaimed any interest in property, apart from his $5,000 in
jewelry. Further, even if he had not, we are doubtful that the
rationale of the privilege would be offended by making Feghi assist
the government in locating those of Yerardi's assets subject to
forfeiture if this were the only adverse consequence said to flow
from the testimony.
 After all, as Trammel explained, the main concerns of the
privilege are the threat to marital harmony and the arguable
unseemliness of requiring one spouse to assist in the criminal
conviction or incarceration of the other spouse. Feghi could
readily be called by the plaintiff in a civil damage action to
establish that Yerardi's negligence had caused a traffic accident
in which the plaintiff was injured, and Feghi could not ordinarily
assert the privilege in such a case even though her testimony might
lead to a large damage award against Yerardi. See generally
Larkin, supra, 4.02[3], at 4-9. We see no reason why recovery of
forfeited assets should be treated differently.
 However, Feghi's purported fear is not confined to
Yerardi's loss of property; she also asserted in the district
court, and argues forcefully in this court, that various of the
questions posed by the government could lead to subsequent criminal
prosecution of Yerardi for tax evasion or related crimes. This is
not on its face a farfetched concern: if Yerardi has been
concealing assets, one might also suppose that he has not been
reporting to the Internal Revenue Service income derived from those
assets and might be subject to tax evasion charges. 26 U.S.C. 
7201. Other offenses based on such concealment can also be
imagined.
 The government says that Feghi is not really concerned
about such a prosecution, arguing that she did not take up the
government's earlier offer to negotiate some form of immunity. At
oral argument, the government tendered a letter in which it offered
to give Feghi, in exchange for her complete and truthful testimony,
a written assurance that it would not use her compelled testimony
directly in any future criminal prosecution of her husband. The
letter explicitly refused to promise Feghi that her testimony would
not be used indirectly, i.e., to generate other evidence that could
be used in such a prosecution.
 We think the government's immunity proposal underscores
the fact that a further criminal prosecution of Yerardi is a
realistic possibility, and that Feghi's answers could contribute to
that prosecution. If this were not so, it is hard to see why the
government's letter would explicitly reserve to it the right to use
Feghi's testimony indirectly, i.e., through "fruits" evidence
derived from it, in a future prosecution. Whatever weight might
generally be accorded to the district court's finding, we cannot
agree that the threat of an adverse affect on Yerardi's legal
interests is so clearly "speculative" as to defeat the privilege.
 It is a different question whether protection against
indirect use is required. We arguably assumed so in In re
Snoonian, 502 F.2d 110 (1st Cir. 1974); there, we held that the
adverse spousal testimony privilege was overcome where the
government filed an affidavit promising that it would not use
either directly or indirectly the compelled grand jury testimony of
one spouse in subsequent criminal proceedings against the other
spouse. See id. at 112-13. Other courts have adopted the same
approach. See In re Grand Jury, 111 F.3d 1083 (3d Cir. 1997); In
re Grand Jury Subpoena (Ford v. United States), 756 F.2d 249 (2d
Cir. 1985). We think it is fair to insist upon such an affidavit
in the present case.
 The government says that, without the reservation
permitting indirect use, a burden would rest upon it to show--in
any future prosecution of Yerardi--that other evidence it might
offer against him apart from Feghi's direct testimony was not
derived from that testimony. However, this is a burden that the
prosecution customarily carries, whenever it compels privileged
testimony through a grant of use immunity, by showing that it has
an independent source for the "other evidence." See, e.g., United
States v. Serrano, 870 F.2d 1 (1st Cir. 1989). Only in peculiar
circumstances has it proved to be an insuperable burden. See
United States v. North, 920 F.2d 940 (D.C. Cir. 1990). It is worth
adding that the government controls the scope of its questioning,
which can be tailored to limit the tainting of future evidence.
 Thus far, we have treated the questions that the
government seeks to compel Feghi to answer as if they were all of
a piece. Customarily, issues of privilege are resolved on a
question-by-question basis, as the privilege may be justified as to
some questions but not as to others. In re Lochiatto, 497 F.2d
803, 805 n.3 (1st Cir. 1974). However, the government has not
argued that all of its questions are benign, and most addressed to
the concealment of assets are not likely to be. Thus, we cannot
avoid the issues posed by this appeal.
 If on remand the government provides an unconditional
Snoonian affidavit, that would eliminate the privilege across the
board for any questions hereafter put to Fehgi. If instead the
government declines to provide an affidavit, it remains free to re-
notice Feghi's deposition and insist on her assertion of the
privilege on a question-by-question basis. However, this assumes
that the government has questions to ask Feghi, the answers to
which could not plausibly threaten the legal interests of Yerardi
in a future criminal prosecution relating to any concealed assets.
Whether the government has such questions is unclear.
 Some formulations of the adverse spousal testimony
privilege state or imply not only that the proceedings in which the
testimony is compelled must be criminal, but that the adverse
effects on the other spouse must be felt in the same proceeding. 
See 8 Wigmore, supra, 2234, at 231. Here, the proceeding is
criminal, Yerardi is a party, but the only likely adverse effect--
apart from the irrelevant loss of property--is future prosecution
of Yerardi for tax evasion or like crimes in another case. Since
the effect is to be felt in a different proceeding, the government
contends that for this reason as well the spousal privilege should
not be allowed.
 Certainly, the line could be drawn in this fashion. Yet,
Snoonian itself holds that a spouse can assert the privilege in a
grand jury proceeding to which no private person is "a party" even
though the adverse effect on the other spouse would occur in what
is formally a different proceeding, namely, the later prosecution
of that spouse. See In re Snoonian, 502 F.2d at 112. It may be
generalization enough to say that the relationship between two
proceedings, which itself bears on the probability of an adverse
effect, is likely to be a matter of degree, and that a case-by-case
resolution will have to do for the present.
 Here, we think that the connection between the
government's criminal forfeiture proceeding directed against
Yerardi and the possible prosecution of him (e.g., for tax evasion)
relating to concealment of the same assets is close enough that the
privilege may fairly be asserted in the forfeiture proceeding to
guard against the use of Feghi's testimony to convict Yerardi
thereafter. Like most privileges that obstruct evidence, the
privilege against adverse spousal testimony is construed strictly,
Trammel, 445 U.S. at 50; but Trammel deliberately preserved the
privilege, and it retains enough force to be respected in the
present case where, as we have noted, the government can remove it
in a one-sentence affidavit.
 Finally, a word should be said about the district court's
statement, already quoted, that another reason for compelling Feghi
to answer now is that a trial court would retain the power later to
exclude her testimony if offered in a new prosecution of Yerardi. 
See also United States v. George, 444 F.2d 310, 314 (6th Cir. 1971)
(similar suggestion). The same course (i.e., deferral) could also
be taken as to "fruits" evidence. The government, which needless
to say prefers an outright rejection of the privilege claim, has
not stressed this possibility; and it is not clear whether the
district court viewed it as an alternative ground for denying the
privilege or simply as a pertinent consideration.
 Such a reservation might at first seem a satisfactory way
of resolving hard privilege issues that turn on predicted future
impact, but it is a solution with some weaknesses. In general, a
privilege once established is overcome only where co-extensive
protection (e.g., immunity) is assured at the time the answer is
compelled. Maness v. Meyers, 419 U.S. 449, 473 (1975) (White, J.,
concurring in the result). Further, the core concerns of the
privilege with which we deal here--marital harmony and seemliness--
would not be fully satisfied by compelling potentially adverse
testimony now and promising merely to consider later exclusion of
it or its fruits in a future trial of the other spouse. 
 The government, as just noted, has not pressed on us the
district court's suggestion that a final ruling on the privilege
issue might be deferred. While postponement might occasionally
serve the prosecutor's interests, in other cases the prosecutor is
far better off with a definitive ruling at the outset, thereby
avoiding (or at least lessening) the risk of conferring unintended
immunity. See generally Garrity v. New Jersey, 385 U.S. 493, 500
(1967); Ellis v. United States, 416 F.2d 791 (D.C. Cir. 1969). 
Whether deferral might ever be a sound solution we leave for
another occasion. 
 Accordingly, we vacate the present order of contempt and
remand the case to the district court so that the government may
furnish the necessary affidavit, if it is so minded. If it does
so, then the adverse spousal privilege should be deemed overcome
and further delay on this ground by Feghi need not be tolerated. 
Failing that, the government is still entitled to depose Feghi, but
she is entitled to invoke the adverse spousal testimony privilege
on a question-by-question basis and subject to district court
scrutiny under standards set forth above.
 It is so ordered.